THE PERSIAN CARPET, INC.,              )
                                       )
              Plaintiff,               )
                                       )
         v.                            )    1:09CV991
                                       )
L. & J.G. STICKLEY, INC.,              )
                                       )
              Defendant.               )

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court pursuant to the parties'
Joint Motion for Entry of Protective Order Respecting
Confidentiality of Discovery Materials. (Docket Entry 12.) For
the reasons that follow, the Court will not grant said motion at
this time, but instead will permit the parties either to submit an
amended protective order that addresses the matters discussed
herein or to brief the reasons why the existing proposal complies
with controlling authority.

### Background

Plaintiff brought this action alleging copyright infringement
by Defendant in violation of 17 U.S.C. §§ 501, et seq. (Docket
Entry 1.) Specifically, Plaintiff contends that Defendant "has
sold rugs having designs copied from and based on [two of
Plaintiff's original rug] designs . . . [and] has caused [these
infringing] rugs to be produced and disseminated to dealers and
customers throughout the United States." (Docket Entry 1 at 3.)
In its Answer to Plaintiff's Complaint, Defendant "denied that
Plaintiff is and at all times has been the owner of copyrights in
[the rug designs referenced in Plaintiff's Complaint]." (Docket

Entry 6 at 2.) Defendant also denied Plaintiff's allegations that rugs Defendant sold constituted copies of or were copied from rug designs that belonged to Plaintiff. (<u>Id.</u> at 3.)

As justification for the entry of the proposed protective order, the parties state that they agree "it will be necessary or appropriate to seek discovery of confidential and proprietary business and financial information during the course of this litigation." (Docket Entry 12 at 1.) According to the parties' proposal, "Confidential Information is information which a Producing Person in good faith regards as a trade secret or other confidential research, development, commercial or proprietary business or financial information." (<u>Id.</u> at Attach 1, p. 2.) In addition to setting conditions on the circumstances under and manner by which they might use confidentially-designated materials (<u>id.</u> at Attach. 1, pp. 2-4), the parties proposed the following:

> 7. If any Confidential Information is used, or if the substance thereof, or any portion thereof, is disclosed in any pleading, motion, brief, or other paper filed with the Court, such document shall be filed under seal with the following legend: "CONFIDENTIAL INFORMATION – FILED UNDER SEAL in accordance with the Order Respecting Confidentiality of Discovery Material entered by the United States District Court for the Middle District of North Carolina, Case No. 1:09-CV-991."

(<u>Id.</u> at Attach. 1, p. 4.) The proposal does not address what, if any, justification the parties would submit to the Court with materials marked "CONFIDENTIAL INFORMATION – FILED UNDER SEAL in accordance with the Order Respecting Confidentiality of Discovery Material entered by the United States District Court for the Middle District of North Carolina, Case No. 1:09-CV-991."

-2-

<u>Discussion</u>

Under the Federal Rules of Civil Procedure ("the Rules"), "[u]nless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ." Fed. R. Civ. 26(b)(1). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." <u>Id.</u> Such "[l]iberal discovery is provided for the sole purpose of assisting in the preparation and trial, or the settlement, of litigated disputes." <u>Seattle Times Co. v. Rhinehart</u>, 467 U.S. 20, 34 (1984).

"The Rules do not differentiate between information that is private or intimate and that to which no privacy interests attach." <u>Id.</u> at 30. "Nor do they apply only to parties to the litigation, as relevant information in the hands of third parties may be subject to discovery." <u>Id.</u> at 35. "Thus, the Rules often allow extensive intrusion into the affairs of both litigants and third parties." <u>Id.</u> at 30. See <u>also</u> <u>id.</u> at 35 (noting that discovery "may seriously implicate privacy interests of litigants and third parties . . . [because] [t]he Rules do not distinguish between public and private information").

"Because of the liberality of pretrial discovery permitted by Rule 26(b)(1), it is necessary for the trial court to have the authority to issue protective orders conferred by Rule 26(c)." <u>Id.</u> Said provision states in relevant part that:

-3-

> The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
>
> (A) forbidding the disclosure or discovery;
>
> . . . .
>
> (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters;
>
> . . . .
>
> (F) requiring that a deposition be sealed and opened only on court order;
>
> (G) requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specific way; and
>
> (H) requiring that the parties simultaneously file specified documents or information in sealed envelopes, to be opened as the court directs.

Fed. R. Civ. P. 26(c).[1]

As noted above, the discovery process is intrusive; "[i]t is not surprising, therefore, that issuance of protective orders in civil litigation has become almost routine." In re Grand Jury Subpoena, 836 F.2d 1468, 1477 (4th Cir. 1988).[2] Often, as in this case, rather than seeking protective orders each time the need

---

[1] "Although [Rule 26(c)] contains no specific reference to privacy or to other rights or interests that may be implicated, such matters are implicit in the broad purpose and language of the Rule." Seattle Times, 467 U.S. at 35 n.21.

[2] The United States Court of Appeals for the Fourth Circuit has found no fault with this development, but instead has recognized that protective orders "aid the civil courts in facilitating resolution of private disputes." In re Grand Jury Subpoena, 836 F.2d 1468, 1472 (4th Cir. 1988). See also In re Krynicki, 983 F.2d 74, 75 (7th Cir. 1992) ("Protective orders entered during discovery in civil cases . . . promote[] disclosure: parties having arguable grounds to resist discovery are more likely to turn over their information if they know that the audience is limited . . . .").

-4-

arises, "parties agree[] to a 'blanket' protective order that permit[s] them to designate documents containing confidential business information." Longman v. Food Lion, Inc., 186 F.R.D. 331, 333 (M.D.N.C. 1999). See also Factory Mut. Ins. Co. v. Insteel Indus., Inc., 212 F.R.D. 301, 303-04 (M.D.N.C. 2002) (describing "'blanket' protective order [as one that] 'permits the parties to protect documents that they in good faith believe contain trade secrets or other confidential commercial information'" (quoting Bayer AG and Miles, Inc. v. Barr Labs., Inc., 162 F.R.D. 456, 463-64 (S.D.N.Y. 1995)); Parkway Gallery Furniture, Inc. v. Kittinger/ Pennsylvania House Group, Inc., 121 F.R.D. 264, 267-68 (M.D.N.C. 1988) (noting that "[b]lanket or umbrella protective orders are becoming increasingly common as large scale litigation involves more massive document exchanges").

Courts regularly enter such orders either "without a showing of good cause, [in which case] the party who later seeks to keep information confidential will bear the burden of showing good cause," or "based on a general 'good cause' determination." Longman, 186 F.R.D. at 333. See also Parkway Gallery, 121 F.R.D. at 268 (observing that "showing of good cause to believe that discovery will involve confidential or protected information . . . may be done on a generalized as opposed to a document-by-document basis"). This Court, per now-Chief Judge James A. Beaty, Jr., has found that, in some cases, such as ones "involv[ing] hundreds of documents containing confidential business information that Defendants feared could be used by Defendants' competitors to gain

-5-

a business advantage," an agreed-upon, blanket protective order "arrangement [i]s essential to the efficient functioning of the discovery process . . . ." <u>Longman</u>, 186 F.R.D. at 333.

Given the foregoing authority, the Court concludes that blanket protective orders constitute an appropriate means for dealing with privacy and related concerns. The Court also finds that the parties' representations in the joint motion and proposed protective order, viewed in light of the underlying allegations in the Complaint and Answer, provide a generalized showing of good cause warranting entry of such an order in this case. More specifically, the Court holds that this case involves commercially-sensitive information of the sort Rule 26(c) exists to protect.

The Court, however, notes two areas of concern raised by the parties' proposed protective order. First, said document makes no reference to Rule 26(c) or any other provision of law as authority for the Court to act. The Court finds that the parties could address this minor point by incorporating language into the proposal indicating that they rely on Rule 26(c) and will limit confidentiality designations to matters falling within the coverage of said Rule. Alternatively, the parties could incorporate other authority for the order they ask the Court to enter.

The Court's second concern requires substantially more discussion. Paragraph Seven of the proposal creates an impression that, without making any showing, the parties may file any document with the Court under seal, simply by marking the document "CONFIDENTIAL INFORMATION - FILED UNDER SEAL in accordance with the

-6-

Order Respecting Confidentiality of Discovery Material entered by the United States District Court for the Middle District of North Carolina, Case No. 1:09-CV-991." Such an approach would not appear consistent with controlling authority.

"The operations of the courts and the judicial conduct of judges are matters of utmost public concern." Landmark Communications, Inc. v. Virginia, 435 U.S. 829, 839 (1978). As a result, "the courts of this country recognize a general right to inspect and copy . . . judicial records and documents." Nixon v. Warner Communications, Inc., 435 U.S. 589, 597 (1978). See also Columbus-America Discovery Group v. Atlantic Mut. Ins. Co., 203 F.3d 291, 303 (4th Cir. 2000) ("Publicity of such records, of course, is necessary in the long run so that the public can judge the product of the courts in a given case. It is hardly possible to come to a reasonable conclusion on that score without knowing the facts of the case."); In re Krynicki, 983 F.2d 74, 75 (7th Cir. 1992) ("Judges deliberate in private but issue public decisions after public arguments based on public records. The political branches of government claim legitimacy by election, judges by reason. Any step that withdraws an element of the judicial process from public view makes the ensuing decision look more like fiat; this requires rigorous justification.").[3]

---

[3] The right of access to court records flows from the right of access to in-court proceedings; it applies in both civil and criminal cases. See Rushford v. The New Yorker Magazine, Inc., 846 F.2d 249, 253 & n.4 (4th Cir. 1988).

"The right of public access to documents or materials filed in a district court derives from two independent sources: the common law and the First Amendment." Virginia Dept. of State Police v. The Washington Post, 386 F.3d 567, 575 (4th Cir. 2004). "While the common law presumption in favor of access attaches to all 'judicial records and documents,' the First Amendment guarantee of access has been extended only to particular judicial records and documents." Stone v. University of Md. Med. Sys. Corp., 855 F.2d 178, 180 (4th Cir. 1988) (internal citation omitted). See also Rushford v. The New Yorker Magazine, Inc., 846 F.2d 249 (4th Cir. 1988) (ruling that First Amendment access right applies to summary judgment motion attachments). "The distinction between the rights of access afforded by the common law and the First Amendment is significant, because the common law does not afford as much substantive protection to the interests of the press and the public as does the First Amendment." Virginia Dept. of State Police, 386 F.3d at 575 (internal citations and quotation marks omitted). As a result, "different levels of protection may attach to the various records and documents involved in [a] case." Stone, 855 F.2d at 180.[4]

---

[4] "The common law presumption of access may be overcome if competing interests outweigh the interest in access . . . . Where the First Amendment guarantees access, on the other hand, access may be denied only on the basis of a compelling governmental interest, and only if the denial is narrowly tailored to serve that interest." Stone, 855 F.2d at 180 (emphasis added). The United States Supreme Court has identified the following examples of "competing interests" that courts have found sufficient to overcome the common law right of access: 1) the interest in "insur[ing] that [court] records are not used to gratify private spite or promote public scandal [such as] through the publication of the painful and sometimes disgusting details of a divorce case"; 2) the interest in precluding the use of court "files to serve as reservoirs of libelous (continued...)

-8-

The distinction between constitutional and common law access only becomes relevant, however, if the materials at issue actually constitute "judicial documents and records," Stone, 855 F.2d at 180. In this regard, the United States Court of Appeals for the Fourth Circuit (albeit in an unpublished opinion) has joined other courts in "hold[ing] that the mere filing of a document with a court does not render the document judicial." In re Policy Mgt. Sys. Corp., 67 F.3d 296, 1995 WL 541623, at *4 (4th Cir. Sept. 13, 1995) (unpublished) (citing United States v. Amodeo, 44 F.3d 141, 145 (2d Cir. 1995), in concluding "that a document becomes a judicial document when a court uses it in determining litigants' substantive rights"). Accord United States v. Blowers, Nos.

---

[4](...continued)
statements for press consumption"; and 3) the interest in preventing court files from becoming "sources of business information that might harm a litigant's competitive standing." Nixon, 435 U.S. at 598. Although the common-law access balance thus clearly accounts for interests associated with non-governmental litigants and/or third-parties, it is not clear how such interests fit into the First Amendment access analysis, given that test's use of the term "governmental interest." In other words, in the context of a civil case involving non-governmental litigants and/or third-parties, how does one define or discern a "governmental interest"? Does the government have an interest in the vindication of an individual's right to personal privacy or a business's right to freedom from unfair competitive disadvantage? Some courts have addressed this conundrum by substituting the notion of "higher value" for "governmental interest" in such contexts. See Level 3 Communications, LLC v. Limelight Networks, Inc., 611 F. Supp. 2d 572, 580-83 (E.D. Va. 2009) (discussing cases that cited right to privacy, property right in trade secrets, privilege against disclosure of attorney-client communications, and duties created by contract as "private" interests that might overcome First Amendment right of access). In at least two decisions (one published, one not), the Fourth Circuit has endorsed the position that a private business's interests can overcome both the common law and the First Amendment rights of access without addressing this "governmental interest" question. See Columbus-America, 203 F.3d at 303 (reversing order "unsealing the list of the inventory of the recovered treasure" awarded to litigant because "value of the inventory may be damaged by premature release of the inventory"); Woven Elec. Corp. v. Advance Group, Inc., 930 F.2d 913, 1991 WL 54118, at *6 (4th Cir. May 6, 1991) (unpublished) (ruling that district court could have closed courtroom and could seal record to protect trade secrets).

-9-

3:05CR93-V, 3:02CR93-V, 2005 WL 3830634, at *3 (W.D.N.C. Oct. 17, 2005) (Tilley, C.J.) ("Although the definition of the term 'judicial documents' is not entirely settled, 'there appears to be agreement that it does not arise from the mere filing of papers or documents, but only those used, submitted, or relied upon by the court in making its decision.'" (quoting Smithkline Beecham Corp. v. Synthon Pharm., Ltd., 210 F.R.D. 163, 167 (M.D.N.C. 2002))).

Accordingly, in any given case, some court-filed "documents fall within the common law presumption of access, while others are subject to the greater right of access provided by the First Amendment. Still others may not qualify as 'judicial records' at all." United States v. Moussaoui, 65 Fed. Appx. 881, 889 (4th Cir. 2003) (citing Amodeo, 44 F.3d at 145-46).

In light of this legal framework, "[w]hen presented with a request to seal judicial records or documents, a district court must comply with certain substantive and procedural requirements. As to the substance, the district court first must determine the source of the right of access with respect to each document, because only then can it accurately weigh the competing interests at stake." Virginia Dept. of State Police, 386 F.3d at 576 (internal citations and quotation marks omitted). See also Moussaoui, 65 Fed. Appx. at 889 ("We therefore must examine [materials submitted under seal] document by document to determine, for each document, the source of the right of access (if any such right exists). As to those documents subject to a right of access, we must then conduct the appropriate balancing to determine whether

-10-

the remainder of the document should remain sealed, in whole or in part. The burden of establishing that a particular document should be sealed rests on the party promoting the denial of access." (internal citation omitted)). Procedurally:

> [The district court] must give the public notice of the request to seal and a reasonable opportunity to challenge the request; it must consider less drastic alternatives to sealing; and if it decides to seal it must state the reasons (and specific supporting findings) for its decision and the reasons for rejecting alternatives to sealing. Adherence to this procedure serves to ensure that the decision to seal materials will not be made lightly and that it will be subject to meaningful appellate review.

Virginia Dept. of State Police, 386 F.3d at 576 (internal citation omitted).

As noted above, the parties' proposed protective order appears to authorize the filing of any document under seal provided the parties simply mark it "CONFIDENTIAL INFORMATION – FILED UNDER SEAL in accordance with the Order Respecting Confidentiality of Discovery Material entered by the United States District Court for the Middle District of North Carolina, Case No. 1:09-CV-991." Because such an approach pretermits the filing of a motion to seal (and supporting brief), it is not clear how the Court could carry out the Fourth Circuit's procedural requirements of "consider[ing] less drastic alternatives to sealing" and "stat[ing] reasons for (and specific supporting findings) for its decision [to seal] and the reasons for rejecting alternatives to sealing," id.[5] Nor,

---

[5] The Court will assume that, through appropriate docketing, the parties' proposal could meet the "public notice" element of the "procedural" portion of
(continued...)

under such scenario, could the Court readily discharge its "substantive" duty to "determine the source of the right of access with respect to each document . . . [and] accurately weigh the competing interests at stake," id. In addition, without guidance from the parties in a motion to seal, the Court might lack sufficient information to assess whether materials at issue qualify as "judicial records" subject to any right of access. See Moussaoui, 65 Fed. Appx. at 889; In re Policy Mgt. Sys. Corp., 1995 WL 541623, at *4.

Moreover, several recent decisions from district courts in the Fourth Circuit (including an opinion from a judge of this Court) call into question the notion, inherent in the parties' proposal, that the provisions of Rule 26(c) afford an alternative to strict compliance with the Fourth Circuit's otherwise applicable sealing regimen. See, e.g., Hill Holiday Connors Cosmopulos, Inc. v. Greenfield, No. 6:08-CV-03980-GRA, 2010 WL 890067, at *1-4 (D.S.C. Mar. 8, 2010) (noting that court "denied a motion to amend the Protective Order that would have eliminated the requirement of following the sealing process under the applicable rules" and proceeding to deny motions to seal for failure to satisfy the Stone standard); Walhonde Tools, Inc. v. Allegheny Energy, Inc., Civil Action No. 2:06-0537, 2008 WL 4509365, at *1-2 (S.D.W. Va. Sept. 30, 2008) (applying Virginia Dept. of State Police/Stone/Rushford test in denying plaintiffs' unopposed motion "requesting leave to

_____

[5](...continued)
the Fourth Circuit's sealing standard. See generally Stone, 855 F.2d at 181 (discussing use of docketing to comply with "public notice" requirement).

-12-

file under seal six exhibits attached to their motion for summary judgment . . . [where] plaintiffs assert[ed] that the documents at issue have been designated as confidential pursuant to protective orders"); Walter Kidde Portable Equip., Inc. v. Universal Security Instruments, Inc., No. 1:05CV01031, 2008 WL 451568, at *1-2 (M.D.N.C. Jan. 16, 2008) (Tilley, J.) (ordering plaintiff to show cause why the court should not deny "its motion for leave to file under seal pursuant to Federal Rule of Civil Procedure 26(c)(7) . . . [because] when this discovery rule is applied to seal documents used in trial or in dispositive motions, such as [plaintiff's] motion for summary judgment, a 'rigorous First Amendment standard' applies to protect the public's right to access . . . [and] Court ha[d] insufficient information to use the procedure prescribed by the Fourth Circuit to weigh the competing interests" (internal citation omitted) (quoting Virginia Dept. of State Police)); Hall v. United Air Lines, Inc., 296 F. Supp. 2d 652, 679-80 (E.D.N.C. 2003) (ordering unsealing of documents filed under seal pursuant to protective order unless parties filed "a brief complying with the Fourth Circuit's mandate, demonstrating the necessity and propriety of sealing information" and observing that, in entering protective order prospectively authorizing sealed filings, "magistrate judge did not review the motion in accordance with the mandatory procedure outlined by the Fourth Circuit in

-13-

<u>Stone</u>" (internal brackets, ellipses, and quotation marks omitted)).[6]

<u>Conclusion</u>

Under these circumstances, the Court will not enter the parties' proposed protective order as currently drafted. Instead, the Court will afford the parties an opportunity: 1) to submit an amended protective order addressing the concerns outlined herein; or 2) to file a motion for reconsideration and supporting brief setting out argument and/or authority showing that the existing proposal complies with binding precedent. If they choose the former option, the parties: 1) may add references to Rule 26(c) and strike the paragraph regarding sealed court filings; or 2) they may otherwise revise those aspects of the proposal in a manner compliant with controlling authority. To the extent any such revised version continues to provide prospectively for the filing of documents under seal, the parties: 1) shall include the phrase "Prospective Sealing Order" in the caption; and 2) shall incorporate into said proposal a description of the court filings covered by the prospective sealing provision (e.g., discovery-related motions, dispositive motions, etc.), a statement explaining

---

[6] Conversely, the Court has not identified any authority from the Fourth Circuit or district courts in the Fourth Circuit expressly holding that prospective sealing provisions of the sort proposed in this case comply with the requirements laid out in <u>Virginia Dept. of State Police</u>, <u>Stone</u>, and <u>Rushford</u>. The "Confidentiality Order" in <u>Longman</u> included a prospective sealing provision, but the Court did not examine the merits of the common law or First Amendment access arguments in that case because the party seeking to raise those claims had waived the opportunity to do so. <u>Longman</u>, 186 F.R.D. at 332-35.

-14-

the need for any sealing (including why alternatives will not suffice), and references to applicable case law.[7]

**IT IS THEREFORE ORDERED** that the parties' Joint Motion for Entry of Protective Order Respecting Confidentiality of Discovery Materials (Docket Entry 12) is DENIED.

**IT IS FURTHER ORDERED** that the parties may submit an amended protective order that addresses the matters discussed in this Memorandum Opinion and Order or, alternatively, may file a motion for reconsideration asking the Court to enter their current "Order Respecting Confidentiality of Discovery Material," with a supporting brief that demonstrates the propriety of that proposal.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

March 29, 2010

---

[7] The Court foresees that, because "[a] party moving to seal documents filed in support of a motion for summary judgment in a civil case bears a heavy burden," Jennings v. University of N.C. at Chapel Hill, 340 F. Supp. 2d 679, 681 (M.D.N.C. 2004), fashioning a prospective sealing provision for filings of that sort will be difficult. However, given the existence of significant authority indicating that "[t]he better rule is that material filed with discovery motions is not subject to the common-law right of access," Chicago Tribune Co. v. Bridgestone/Firestone, Inc., 263 F.3d 1304, 1312 (11th Cir. 2001), it is easier to envision a prospective sealing provision limited to such motions. See also Pintos v. Pacific Creditors Ass'n, 565 F.3d 1106, 1115 (9th Cir. 2009) ("'[G]ood cause' is also the proper standard when a party seeks access to previously sealed discovery attached to a nondispositive motion."); Leucadia, Inc. v. Applied Extrusion Techs., Inc., 998 F.2d 157, 165 (3d Cir. 1993) ("[W]e hold there is a presumptive right to public access to all material filed in connection with nondiscovery pretrial motions . . ., but no such right as to discovery motions and their supporting documents."); Anderson v. Cryovac, Inc., 805 F.2d 1, 10 (1st Cir. 1986) ("Although we agree that the public has a right of access to some parts of the judicial process, we conclude that this right does not extend to documents submitted to a court in connection with discovery proceedings."). Cf. In re Policy Mgt. Sys. Corp., 1995 WL 541623, at *4 (stating "that a document becomes a judicial document when a court uses it in determining litigants' substantive rights" (emphasis added)).

-15-